IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Octavio Estrada,<br><br>Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>Respondents. | No. CV-15-00044-TUC-RCC (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Gabriel Octavio Estrada (Petitioner), formerly incarcerated at the Arizona State Prison Complex – SMU 1/Eyman, in Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before the Court are the Petition (Doc. 1) and Respondent's Limited Answer to Petition for Writ of Habeas Corpus (Doc. 17). The Magistrate Judge **recommends** the District Court, after its independent review of the record, **dismiss** the Petition.

## **Factual Background**

Pursuant to 28 U.S.C. 2254(e)(1), "a determination of a factual issue made by a state court shall be presumed to be correct." That includes findings of fact by an appellate court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012). The Arizona Court of Appeals found the facts as follows:

> W. was sitting on a park bench in Mission Manor Park in Tucson when he saw someone punch and kick the victim, V., multiple times. Although W. was unable to identify Estrada as the person who had assaulted V., he described the assailant as "a younger Mexican guy, like around his 20s," who had a tattoo and was wearing a "white muscle shirt and blue jeans." Another witness testified that V. "was trying to … protect himself, … blocking his face, kind of curled up." Yet another witness described the assailant as a Hispanic male who was wearing "khaki shorts and a striped shirt," who was "[t]hin" and not much taller than the witness, who is five feet, two inches tall.
>
> An investigating police officer testified V. had "facial injuries, blood all over his face, several cuts and lacerations, [and] some bumps." One of the witnesses testified the assailant had "sped away" in a "tan Chevy Astro van" after the incident. And witnesses provided police with the license plate number of the van, which was registered to Estrada. Officers subsequently located the van parking in the backyard of a residence and covered with "netting … kind of like the typical military type netting, camouflage type."
>
> A police detective described the procedure for the photographic lineup and testified that of the three witnesses who had viewed the photographs, one was unable to recognize anyone, while one witness, M., and other witness identified Estrada as "looking familiar," although they were not certain he was the assailant. M. also testified that she had "looked at [the assailant] pretty good," and that she was "[n]inety percent" certain the person she had identified in the photographic lineup was the assailant. Notably, she also identified Estrada in the courtroom as the assailant.
>
> W. also testified that although he had not seen the assailant "going through [C.'s] pockets," he did not see him remove anything. M. similarly testified that the assailant was "patting [V.] down" and placing his hands on V.'s clothing "checking to see what he had" while V., who "looked like he was passed out," was lying on the "floor."

(Doc. 18 at Ex. E at ¶¶ 2-6.) Petitioner was charged with robbery. (*Id.* at Ex. A.) A jury found Petitioner guilty of the lesser-included offense of attempted robbery, and aggravated assault causing temporary but substantial disfigurement, temporary

but substantial loss or impairment of any body organ or part, or a fracture of any body part. (Doc. 18 at Ex. B.) After finding that Petitioner had a prior historical felony conviction, the trial court sentenced Petitioner to concurrent, presumptive terms of imprisonment, the longest of which was 4.5 years. (*Id.*)

**Procedural Background**

The Direct Appeal

Petitioner directly appealed his conviction to the Arizona Court of Appeals challenging only the sufficiency of the evidence. (Doc. 18 at Ex. D.) The court of appeals affirmed Petitioner's conviction and sentence. (*Id.* at Ex. E.) The Arizona Supreme Court denied review. (*Id.* at Ex. F.)

The Post-Conviction Relief Proceeding

Petitioner timely initiated a state court post-conviction relief (PCR) proceeding. (*Id.* at G, H, and I.) Petitioner's court appointed PCR counsel filed a notice with the trial court stating that after her review of the record "she can find no issues for review. " (*Id.* at Ex. J at p. 1, ll. 17-18.) Additionally, however, Petitioner's court appointed PCR counsel suggested that two errors by Petitioner's trial counsel may warrant relief. First, PCR counsel stated that Petitioner's trial counsel was ineffective for failing to call Dr. Brown to testify that the victim's nasal fracture may have occurred prior to the assault in issue. Second, PCR counsel stated that trial counsel "told Petitioner that he should not testify." (*Id.* at Ex. J at p. 2, ll. 23-25.)

The trial court granted PCR counsel's request that Petitioner be given additional time to file a *pro se* PCR petition. (Doc. 19 at Ex. K.) In his *pro se* Petition, Petitioner asserted that his trial counsel had been ineffective in failing to call three witnesses and in denying him his right to testify at trial. (*Id.* at Ex. L.) In dismissing Petitioner's PCR petition the trial court determined, in relevant part,

> Petitioner claims that by failing to call three witnesses, he was prejudiced, however, one witness was the victim, whom was not

> anticipated to show at trial and whom Petitioner's trial attorney deemed to present as sympathetic; one was the doctor who examined the witness and the portion of her testimony helpful to the defense was stipulated to by the parties; and one was a witness who intervened in the assault. Counsel was neither ineffective for strategically deciding not to call these witnesses; nor was the Petitioner prejudiced in any way by their absence at trial.
>
> Petitioner also claims that trial counsel prevented him from testifying on his own behalf; however in light of counsel's affidavit, and the familiarity this Court has with Ms. Sweeney, this claim is wholly incredible. Not only would the Petitioner have opened himself up to impeachment with his own prior conviction, he apparently would have testified that he, indeed, assaulted the victim without reasonable provocation or justification under the law. Ultimately, this Court believes that it was the Petitioner's decision not to testify, and it was a sound one.

(Doc. 19 at Ex. M at p. 2.) Petitioner failed to challenge the trial court's dismissal of his PCR petition in the Arizona Court of Appeals. (Doc. 1 at p. 5.)

<u>The Petition</u>

Petitioner filed his Petition on January 28, 2015 asserting three grounds for relief. (*Id.*) In Ground One, Petitioner alleges that his trial counsel failed to call three witnesses, to wit, Dr. Julia Brown, Richard Mendoza, and Jimmy Valdez. (*Id.* at p. 6.) In Ground Two, Petitioner alleges he "was denied the opportunity to speak on my own behalf" … "because of faulty advice from my … trial attorney.") (*Id.* at p. 7.) In Ground Three, Petitioner alleges that his rights under the 14th Amendment were violated because witness Jimmy Valdez was not present at trial as a result of Petitioner's trial counsel's alleged breach of her duty of loyalty, alleged failure to consult with and inform Petitioner of "important decisions." (*Id.* at p. 8.)

**Petitioner Failed to Exhaust His Claims**

**and His Claims are Procedural Defaulted Without Excuse**

The Petition is governed by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. In order to seek federal habeas relief a state

- 4 -

prisoner must allege that he is being held in violation of federal law. 28 U.S.C. § 2254(a). With the exception of habeas petitions regarding life-sentences or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas relief once the Arizona Court of Appeals has ruled on them. *Castillo v. McFadden*, 399 F.3d 993, 998 n.3 (9th Cir. 2005); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). A petitioner cannot exhaust a federal claim without "fairly presenting" the claim in state court proceedings and, in order to fairly present a federal claim in state court proceedings, a petitioner must describe both the operative facts and the federal law basis for the claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

Whether or not a petitioner has "fairly present[ed]" a claim to the state courts, his federal claims may be barred under the procedural default doctrine. *See Murray v. Carrier*, 477 U.S. 478, 485-92 (1986). There are two types of procedural default, express or implied. *See Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). Express procedural default operates to bar a federal habeas claim where a state court expressly applied a procedural bar to the prisoner's claim when the prisoner attempted to raise the claim in state court. *See Ylst v. Nunnemaker,* 501 U.S. 797, 802-05 (1991). Implied default (also referred to as technical exhaustion) occurs when the prisoner never presented his claim in state court and returning the prisoner to state court to present that claim would be futile under the state's procedural rules. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *see also Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred … There is a procedural default for purposes of federal habeas.").

Arizona's procedural default rules typically render futile any attempt to

return to state court and present additional claims. *See* Rules 32.2 and 32.4(a), Ariz. R. Crim. P., (successive post-conviction relief proceeding allowed only under limited circumstances). Arizona's procedural default rules are strictly and regularly applied. *See Ortiz v. Stewart*, 149 F.3d 923, 932-32 (9th Cir. 1998) (rejecting argument that Arizona court have not "strictly or regularly followed" Rule 32.2(a)). Rule 32.4(a), Ariz. R. Crim. P., presents a time bar. *See* Ariz. R. Crim. P. 32.4(a) (PCR petition must be filed within 90 days after entry of judgment and sentence or within 30 days after the issuance of the order and mandate in the direct appeal). Courts recognize timeliness under Rule 32.4(a) as a basis for dismissal of a PCR petition, distinct from preclusion under Rule 32.2(a). *See Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997).

Federal habeas review of a procedurally defaulted claim is barred unless the petitioner can show cause and prejudice, or that a failure to consider the claim would result in a fundamental miscarriage of justice. *See Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999). The cause standard requires the petitioner to show that "some objective factor external to the defense impeded his efforts" to raise the claim in state court. *Murray*, 477 U.S. at 488. If the petitioner fails to show cause, then prejudice need not be addressed. *Id.* "Prejudice" requires a showing that he alleged constitutional violation "worked to [the petitioner's] actual and substantial disadvantage, injecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (Emphasis omitted.) To prove a fundamental miscarriage of justice, a petitioner must show that it is more likely than not that no reasonable jury could have found him guilty of the offense. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Here, all of the claims alleged in the Petition are procedurally defaulted as Petitioner admittedly failed to appeal the trial court's ruling dismissing his PCR petition to Arizona Court of Appeals. (Doc. 1 at p. 5.) Petitioner states,

I did not appeal to the Arizona Court of Appeals on my first petition

> for post conviction relief for the forgoing (*sic*) reasons; that to my complete understanding I was barred from raising my future claims on my apppeal (*sic*) for Rule 32. Because I failed to support my claims with any sworn statement and/or affidavits.

(Doc. 1 at p. 5.)

Petitioner has failed to establish cause and prejudice or that a fundamental miscarriage of justice would occur of the Court failed to consider his procedurally defaulted claims. As mentioned above, Petitioner claims that he did not appeal the trial court's dismissal of his PCR petition because he thought he was barred from doing so because he failed to support his claims with sworn statements or affidavits. Petitioner further claims, "Also the allowed time to file a petition for review for my Rule 32's court desision (*sic*) has expired do (*sic*) [to] law library difficulties." (*Id.*) These reasons provided by Petitioner are insufficient to establish cause. *See, e.g., Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1986) (alleged inadequate prison library and legal assisting procedures not cause); *Hughes v. Idaho Bd. of Corrections*, 800 F.2d 905, 908-09 (9th Cir. 1986) (petitioner's *pro se* status, release of inmate assistant, and illiteracy not cause); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (mental state of *pro se* petitioner and incompetent jailhouse lawyer not cause).

Additionally, Petitioner has made no effort to establish prejudice nor has Petitioner made any effort to establish that a fundamental miscarriage of justice would occur if the Court did not consider the Petition. Indeed, it seems to this Court that Petitioner could not establish a fundamental miscarriage of justice in light of the trial court's statement in its ruling on Petitioner's state court PCR petition that Petitioner, if he had testified, would have admitted assaulting the victim. *See* Doc. 19 at Ex. M. at p. 2 ("Not only would the Petitioner have opened himself up to impeachment with his own prior conviction, he apparently would have testified that he, indeed, assaulted the victim without reasonable provocation or justification under the law.")

Petitioner has shown neither cause, nor prejudice, nor actual innocence, to excuse his failure to exhaust his claims in state court. As such, his claims are precluded from review by this Court. *Murray*, 477 U.S. at 488. The Petition should be dismissed.

**Petitioner's Claims Lack Merit**

Even if Petitioner's claims were not procedurally defaulted without excuse (and they *are* procedurally defaulted without excuse) Petitioner's claims lack merit. Section 2254, 28 U.S.C., prohibits this Court from issuing a writ of habeas corpus unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth by the Supreme Court or if the state court arrives at a result different from Supreme Court precedent on materially indistinguishable facts. *Early v. Packer*, 537 U.S. 3, 8 (2002). The "unreasonable application" clause of § 2254(d)(1) requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409-12 (2000)). A state court's factual determination "shall be presumed to be correct" on federal habeas review and a petitioner can overcome that presumption only by "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Sixth Amendment right to counsel is the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88. The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A failure to raise untenable issues on appeal does not fall below the *Strickland* standard." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The federal habeas court's review of a § 2254 claim asserting ineffective assistance of counsel is doubly deferential. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). (Citations and quotations omitted.)

As mentioned above, the trial court rejected Petitioner's claim of error regarding the three witnesses determining that trial counsel was not ineffective for strategically deciding not to call the three witnesses. The trial court also determined that Petitioner did not suffer any prejudice as a result of the witnesses' absence from trial. (Doc. 19 at Ex. M. at p. 2.) The trial court rejected Petitioner's contention that his trial counsel was ineffective as it related to Petitioner's allegation that he suffered prejudice by not testifying concluding the claim was "wholly incredible." (*Id.*) Petitioner has failed to establish that the trial court's determination was an unreasonable application of *Strickland*. Petitioner's

expansion of his claim of error by trial counsel as it relates to witness Jimmy Martinez (as set forth in Ground Three of the Petition) is also without merit; Petitioner has utterly failed to support his allegations with any facts.

Petitioner's claims, in addition to being procedurally defaulted without excuse, lack merit.

### **Recommendation**

Petitioner's claims are procedurally defaulted without excuse and are not reviewable by the Court. Petitioner's claims also lack merit. Based on the foregoing, the Magistrate Judge recommends the District Court **DISMISS** the Petition for Writ of Habeas Corpus.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **15-CV-00044-RCC**.

Dated this 24th day of May, 2017.

_____
Honorable D. Thomas Ferraro
United States Magistrate Judge